1  **WO**

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  United States of America,                    **No.  CR-21-01657-TUC-JGZ (EJM)**

10                 Plaintiff,

11  v.                                           **REPORT AND RECOMMENDATION**

12  Daneil Alexander Brewer,

13                 Defendant.

14          Pending before the Court is a Petition to Revoke the defendant's Supervised

15  Release.  (Doc. 58.)  The petition alleges six violations of supervised release conditions:

16  (1) marijuana use; (2) failure to notify the probation officer of a change in residence; (3)

17  failure to participate in substance abuse treatment; (4) failure to participate in mental

18  health treatment; (5) unsuccessful discharge from Behavioral Systems Southwest

19  ("BSSW"); and (6) alcohol use.  Based on the testimony and evidence presented at the

20  evidentiary hearing on the violations, the Court finds that the government has proven by a

21  preponderance of the evidence that the defendant violated his conditions of supervised

22  release. [1]

23          Accordingly, it is recommended that the District Court revoke the defendant's

24  supervised release.

25  . . .

26  . . .

27  _____

28          [1]  The Court granted the government's motion to dismiss the changing residence violation
prior to the evidentiary hearing.

## I.    FACTUAL BACKGROUND

On September 30, 2022, the defendant was sentenced on a felony offense to 15 months in custody and a 36-month term of supervised release.  (Gov't Ex. 1.)   On November 21, 2024, the defendant's term of supervised release was revoked and he was sentenced to time served and an additional 28 months of supervised release.  (Gov't Ex. 2.)  The second term of supervised release began on December 11, 2024.  (Gov't Ex. 3.)

A supervised release violation petition was filed on April 22, 2025, which alleged the violations set forth above.  The defendant entered denials and an evidentiary hearing was held before this Court on August 4, 2025.  U.S. Probation Officer Pauline Ware and the defendant testified.  Their testimony is set forth below.

### A.    U.S. Probation Officer Ware

Officer Ware has been employed as a U.S. Probation Officer in the District of Arizona for thirteen (13) years.  (Hr'g Tr. 8/4/2025 (Doc. 72) at 4.)  She is currently an intensive supervision specialist.  (*Id*. at 5.)  Officer Ware was assigned to supervise the defendant.  (*Id*.)  As with all probationers, before Officer Ware met with the defendant she did a preliminary background check, read the presentence report and any CHRONOS that may have already been in the defendant's file, and checked for recent police contact.  (*Id*. at 5–6.)

At her initial intake appointment with the defendant on October 2, 2023, she used the September 22, 2022, Judgment and Commitment ("J&C") Order to review the special, standard, and mandatory supervised release conditions with the defendant.  (*Id*. 6–7; Gov't Ex. 1.)  Officer Ware had the defendant sign and date the last page of the J&C to acknowledge that he understood the conditions and what was required of him.  (Hr'g Tr. 8/4/2025 (Doc. 72) at 7; Gov't Ex. 1.)

On November 21, 2024, the defendant's supervised release was revoked and he was sentenced to "time served plus twenty-one (21) days" and an additional 28 months of supervised release.  (Gov't Ex. 2.)  The defendant's second term of supervised release began after his release from custody on or about December 11, 2024.  (Gov't Ex. 3.)

On December 27, 2024, Officer Ware reviewed the November 21, 2024 Judgment and Commitment Revocation of Supervised Release with the defendant. (Hr'g Tr. 8/4/2025 (Doc. 72) at 8.) The defendant told Officer Ware that he understood the conditions and acknowledged his understanding by signing and dating the J&C. (*Id.*)

At the same meeting the defendant submitted a urine sample that tested positive for marijuana. (*Id.* at 10.) The defendant said that he used marijuana prior to his release from the Bureau of Prisons and signed an admission form acknowledging his use of marijuana. (*Id.* at 11; Gov't Ex. 4.) The defendant did not tell Officer Ware prior to the test that he had used marijuana. (Hr'g Tr. 8/4/2025 (Doc. 72) at 27.) Officer Ware did not send the urine sample to an outside laboratory for testing, because the defendant admitted to using marijuana. (*Id.* at 10.)

Officer Ware's view is that a term of supervision starts when a defendant is "actually released" from custody. (*Id.* at 22.) She further opined, however, that it is a violation of supervised release to use marijuana while in custody because the defendant is made aware at sentencing of the standard, mandatory, and/or special conditions of supervised release. (*Id.*)

On January 7, 2025, the defendant submitted another urine sample which also tested positive for marijuana. (*Id.* at 11–12.) The defendant told Officer Ware that he tested positive "due to prior use." (Hr'g Tr. 8/4/2025 (Doc. 72) at 12.) In Officer Ware's experience, marijuana stays in a person's system for "a certain amount of time[.]" (*Id.*) Officer Ware reminded the defendant that he "cannot use any illicit substances" and must follow the rules of the residential reentry center. (*Id.* at 13.)

On March 13, 2025, Officer Ware received an email from Rashida Smith, a clinical care manager at Horizons Behavioral Health, advising that the defendant was scheduled for substance abuse treatment and a mental health assessment on March 19, 2025, and that he was aware of the appointments. (*Id.* at 14–16; Gov't Ex. 6.) Ms. Smith subsequently advised Officer Ware that the defendant missed the March 19, 2025, appointments, as well as some prior appointments. (Hr'g Tr. 8/4/2025 (Doc. 72) at 16–

17.)

Officer Ware was notified by staff at BSSW on March 13, 2025, that the defendant was unsuccessfully discharged from their facility based on alcohol use. (*Id*. at 18.) BSSW staff advised Officer Ware that two breathalyzer tests were administered to the defendant by staff at BSSW and he tested positive for alcohol. (*Id*. at 24.) Officer Ware requested the results of those tests but they were not provided. (*Id*. at 29.) The defendant had "at least nine [other] infractions" while at BSSW prior to his discharge for alcohol use. (*Id*. at 20.) BSSW staff gave the defendant "the liberty to address [those infractions] through different chores he could do there[.]" (Hr'g Tr. 8/4/2025 (Doc. 72) at 20.) However, BSSW had to remove the defendant from their program because of his alcohol use. (*Id*.) During a phone conversation on March 13, 2025, the defendant told Officer Ware that he did not knowingly drink alcohol because he thought what he was drinking was an energy drink. (*Id*. at 19, 24.)

The defendant's substance abuse treatment and mental health assessment were supposed to take place at Horizon Behavioral Heath in Casa Grande/Florence, Arizona. (*Id*. at 22.) The defendant's drug and alcohol testing occurred at BSSW. (*Id*. at 23.) Officer Ware does not believe that Horizon Behavioral Health and BSSW are located on the same "campus." (Hr'g Tr. 8/4/2025 (Doc. 72) at 23–24.) As a result, if the defendant was not permitted to return to the BSSW facility after his discharge on March 13, 2025, he still could have gone to Horizon Behavioral Heath for his appointments on March 19, 2025. (*Id*.)

On March 17, 2025, the defendant sent Officer Ware a text message advising her that he was going to be residing at another sober living house. (*Id*. at 24.) At that time, however, Officer Ware did not know that the text message was from the defendant because it was not sent from his phone number. (*Id*. at 25–26.) The Probation Department must approve the substance abuse treatment center or sober living environment that a probationer will reside at. (*Id*. at 30.) Officer Ware and the defendant discussed sober living environments that may be appropriate after he completed the

program at BSSW.  (Hr'g Tr. 8/4/2025 (Doc. 72) at 31–32.)  Officer Ware, however, never approved the defendant residing anywhere other than BSSW.  (*Id*. at 31.)

### B.    Daniel Brewer

The defendant's view is that "if a person is in custody, they are not on probation and they are not bound by these probation requirements." (Hr'g Tr. 8/4/2025 (Doc. 72) at 34.) As a result, if he did something while in custody, then that act cannot be "transferred out as a violation of probation[.]" (*Id*. at 35.) He believes that his probation "was put on pause" or "hold" while he was in custody for the first supervised release violation. (*Id*. at 38.)

The defendant testified he missed multiple days of treatment prior to the appointments on March 19, 2025, because he was not permitted to leave the BSSW facility. (*Id*. at 35.) If he had left BSSW, he would have been deemed an absconder and would have been arrested. (*Id*. at 35–36.)

The defendant claims that he was never told about the March 19, 2025, appointments. (Hr'g Tr. 8/4/2025 (Doc. 72) at 36.) Specifically, Officer Ware did not tell him about the appointments when he spoke with her on the phone on March 14, 2025. (*Id*.)

The defendant was having a hard time at BSSW and Officer Ware did not do anything to help him. (*Id*.) BSSW staff were taking his phone and restricting his ability to go to work. (*Id*. at 37.) He feels like the staff were trying to sabotage him. (*Id*.) On March 13, 2025, the staff claimed that he was stumbling around and slurring his speech, when in fact he was "walking around like normal." (Hr'g Tr. 8/4/2025 (Doc. 72) at 37.) Additionally, the staff did not "find any containers or anything in the van, they found no evidence of [his] supposed use of alcohol[,]" and there were no test results proving that he drank alcohol. (*Id*.) The defendant does not recall being administered a breathalyzer test by BSSW staff. (*Id*. at 40.) He told Officer Ware that he consumed two energy drinks. (*Id*.)

. . .

## II.    DISCUSSION

"[T]he government bears the burden to demonstrate that a defendant has violated a condition" of his supervision.  *United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006).  "[T]he district court need only conclude that a preponderance of the evidence supports" revocation.  *United States v. Lomayaoma*, 86 F.3d 142, 147 (9th Cir. 1996).  While the burden is only a preponderance of the evidence, and not beyond a reasonable doubt, to prove the violation there must still be credible evidence the releasee violated the terms of supervision.  *United States v. Perez*, 526 F.3d 543, 547 (9th Cir. 2008).  As discussed below, the Court finds that the government has met its burden.

### A.    Allegation A:  Use of Marijuana

A urinalysis test revealed the presence of marijuana.  After the defendant was confronted with the results of the test, he told Officer Ware that he used marijuana while he was still in custody.  The Court finds that claim incredible for the following reasons.  First, if the defendant indeed used marijuana while in custody, it makes sense that he would have volunteered that information to Officer Ware prior to the drug test to explain why the test may be positive.  Second, and more importantly, the defendant never testified that he used marijuana while in custody.  Rather, his testimony on this issue focused on his view that his supervised release was on "pause" or "hold" while in custody, and as a result, if he did something while in custody that act cannot result in a supervised release violation.  If the defendant only used marijuana while in custody, he presumably would have provided sworn testimony to that effect.

Based on the foregoing, the Court concludes that the government has proven by a preponderance of the evidence that the defendant violated a supervised release condition by using marijuana.

### B.    Allegations C & D:  Failure to Report to Substance Abuse and Mental Health Treatment

The defendant admitted that he did not attend the March 19, 2025, appointments as well as other previously scheduled appointments.  The defendant testified that he was

not told about the March 19, 2025, appointments. He further testified that he missed prior appointments because he did not have permission to leave the BSSW facility and would have been classified as an absconder and arrested if he did so. The Court finds the defendant's testimony incredible based on the evidence discussed below.

Officer Ware testified that Rashida Smith, a clinical care manager at Horizons Behavioral Health, advised her via email on March 13, 2025, that the defendant was scheduled for substance abuse treatment and a mental health assessment on March 19, 2025, and that he was aware of the appointments. (Hr'g Tr. 8/4/2025 (Doc. 72) at 14–16; Gov't Ex. 6.) Ms. Smith later advised Officer Ware that the defendant missed the March 19, 2025, appointments, as well as some prior appointments. (*Id*. at 16.) Additionally, Officer Ware's contemporaneous CHRONOS notes reflect that a Case Manager at BSSW sent her an email on March 11, 2025, advising that the Case Manager has "been in contact with Horizon today" and the defendant is seeing "the doctor today at 1700 and on 3/19/2025 at 1715." (Gov't Ex. 9 at 4.)

Based on the foregoing, the Court concludes that the government has proven by a preponderance of the evidence that the defendant violated supervised release conditions by failing to report to substance abuse and mental health treatment.

### C. Allegations E & F: Unsuccessful Discharge from BSSW and Alcohol Use

Officer Ware testified that staff at BSSW advised her on March 13, 2025, that two breathalyzer tests were administered to the defendant and both revealed that the defendant had consumed alcohol. As a result, the defendant was being unsuccessfully discharged from their facility. Officer Ware also testified that the defendant had at least nine (9) other infractions at BSSW prior to his discharge for alcohol use. Finally, Officer Ware testified that the defendant told her that he did not knowingly drink alcohol because he thought he was drinking was an energy drink.

The defendant testified that he told Officer Ware that he drank two energy drinks. He further testified that BSSW staff claimed that he was stumbling around and slurring his speech, when in fact he was "walking around like normal." (Hr'g Tr. 8/4/2025 (Doc.

72) at 37.)  He also testified that the staff did not "find any containers or anything in the van, they found no evidence of [his] supposed use of alcohol," and there were no test results proving that he drank alcohol.  (*Id*.)  He does not recall being administered a breathalyzer test.  (*Id*. at 40.)

Once again, the Court does not find the defendant's testimony credible for the following reasons.  The first is defendant's inability to recall two breathalyzer tests conducted on the day of his discharge, which was obviously a significant event.  The Court has no reason to doubt that those tests occurred and were positive for alcohol.  Second, the defendant never testified about the brand of the beverage(s) he consumed or described the container(s) to support his contention that he unknowingly consumed alcohol.  Third, if the defendant consumed two beverages that presumably contained hard alcohol, he would have felt the depressant effect of those beverages, and not an energy boost from caffeine.  He could have reported to BSSW staff his concern that he unknowingly consumed alcohol before the breathalyzer tests were administered.  Fourth, BSSW staff routinely deals with individuals with drug and/or or alcohol issues and are attuned to look for clues of use of drugs and alcohol, such as the defendant's stumbling and slurred speech observed by BSSW staff.

Finally, the Court notes that even if the defendant did not knowingly consume alcohol, BSSW staff advised Officer Ware that the defendant had at least nine prior infractions.  Those infractions undoubtedly could have resulted in the defendant's unsuccessful discharge from BSSW if staff had not exercised discretion and gave the defendant an opportunity to address the infractions through chores.

The Court finds that the government has proven by a preponderance of the evidence that the defendant was unsuccessfully discharged from BSSW and knowingly used alcohol.

## IV.    RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District

1  Judge **revoke defendant's supervised release and a Disposition Hearing be**
2  **scheduled**.

3  Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal
4  Procedure, any party may serve and file written objections within fourteen (14) days after
5  being served with a copy of this Report and Recommendation.  No reply shall be filed
6  unless leave is granted from the District Court.  If objections are filed, the parties should
7  use the following case number:  **CR 21-01657-TUC-JGZ.**

8  Failure to file timely objections to any factual or legal determination of the
9  Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right
10  of review.

13  Dated this 13th day of August, 2025.

Eric J. Markovich
United States Magistrate Judge

-9-